[Crim. No. 1117.   Fourth Dist.   Sept. 24, 1956.]

THE PEOPLE, Respondent, v. DAVID W. BENTON, Appellant.

---

*Assigned by Chairman of Judicial Council.

Alan Nixen, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was charged in an information with the crime of robbery, a violation of section 211 of the Penal Code. On August 26, 1955, he entered a plea of not guilty to the charge and on September 8th on his motion, his plea of not guilty was ordered withdrawn and a plea of not guilty by reason of insanity was ordered entered. Alienists were appointed by the court and ordered to submit their reports. On October 11th the reports of the doctors were received and considered by the court and counsel and it was stipulated that the issue as to the defendant's sanity at the time of the commission of the crime be tried and determined on the doctors' reports. The court then found that the defendant was sane at the time of the commission of the offense and the matter was referred to the probation officer for investigation and report. On October 21st the report of the probation officer was received and the defendant, when asked by the court if there was any legal cause why judgment should not be pronounced, informed the court that he did not understand the nature of his former plea and requested further counsel. The matter was then continued to November 3d, on which date defendant informed the court that he had retained one Dale C. Miller as counsel and a continuance of the case was thereupon had to November 8th. On that date Alan Nixen was appointed as defendant's counsel and Mr. Miller was relieved as attorney of record. The matter was again continued to November 10th when, on defendant's motion, his plea of not guilty by reason of insanity was

withdrawn and a plea of not guilty and not guilty by reason of insanity was entered. A jury trial was ordered and set for November 28th. On November 18, 1955, the trial court reviewed the history of the proceedings to the defendant, who then withdrew his plea of not guilty and stated that it was his intention to have the matter tried on the issue of not guilty by reason of insanity only. The court then explained to the defendant the consequences of such a plea and he stated that he fully understood. His pleas of not guilty and not guilty by reason of insanity were ordered withdrawn and his plea of not guilty by reason of insanity entered. A jury trial was had on this issue and a verdict was returned by the jury finding that the defendant was sane at the time of the commission of the offense charged. His application for probation was denied and he was sentenced to the state prison for the term prescribed by law. He appeals from the judgment of conviction.

On March 16, 1956, pursuant to the request of the defendant, this court appointed Alan Nixen, the attorney who represented the defendant at the trial, as counsel for defendant on this appeal. Mr. Nixen filed a report herein rather than a brief (*People* v. *Bennett,* 120 Cal.App.2d 835 [262 P.2d 59]). He states therein that he has examined the complete record in the lower court and has concluded, after careful research of the points raised by the appellant, that appellant does not have any meritorious grounds for appeal. After studying the record herein, we agree with this conclusion.

The evidence shows that on August 15, 1955, at about 1 p. m., the defendant entered a variety store in Riverside and there waited until the proprietress (Ann Loucks) finished waiting on customers then in the store. Defendant asked to look at a certain kind of paint and when Ann Loucks' back was turned, lunged at her and said, ''Hold it right there. This is a stickup.'' Ann Loucks testified that he then took her to a back room, tied a rope around her waist and arms and closed her mouth; that he told her not to make any noise, that he had a knife with him. She stated that the defendant had the rope with him when he entered the store. A witness who was in the store immediately after Ann Loucks was taken to the back room, testified that she saw the defendant taking money out of the cash register. Defendant was arrested by the police officers shortly thereafter and was taken to the store where he was identified. He made conflicting statements to the officers as to his whereabouts at the time of the commis-

sion of the offense and concerning the coins and other personal property found in his possession. While it was stipulated at the trial that the defendant had committed the offense charged and on his plea of not guilty by reason of insanity he admitted the commission of the offense (Pen. Code, § 1016), the evidence is amply sufficient to establish the robbery charge. The evidence on the issue of insanity consisted principally of the testimony of psychiatrists who had examined the defendant.

Dr. Daniel S. Castile, a psychiatrist, testified that he made an electroencephalogram test and tracings of the defendant's brain which suggested damage thereto; that in his opinion the defendant was unable to differentiate between right and wrong and was therefore insane and that defendant was a man whose sanity was marginal.

Dr. Michael Koenig testified that from his examination of the defendant he concluded that the defendant did not have a clear idea of right and wrong; that he was not in a position to state whether the defendant was insane or not but that he did show evidence of mental impairment to a degree.

Dr. Robert Cook, a psychiatrist called by the People, testified that he examined the defendant and conducted several tests on the basis of which he stated that he found the defendant "by the legal definition of legal sanity to be sane."

Dr. Otto L. Gericke, Superintendent and Medical Director of the hospital at Patton, Diplomat of the American Bureau of Psychiatrists and Neurologists and a Fellow in the American Psychiatric Association, testified that he examined the defendant and also reviewed the report of Dr. Castile and the electroencephalogram which he took; that he made a second examination of the defendant three weeks later; that it was his opinion that on the date of the alleged offense the defendant was sane and knew the difference between right and wrong and the nature and quality of his act.

■ As is said in *People* v. *Daugherty,* 40 Cal.2d 876, 894 [256 P.2d 911]:

" ' . . . Legal sanity, in a criminal case, under our court declared law, means "reasoning capacity sufficient to distinguish between right and wrong as to the particular act he is doing, knowledge and consciousness that what he is doing is wrong and criminal and will subject him to punishment." . . .' "

■ The defendant had the burden of proving insanity by a preponderance of the evidence (*People* v. *Daugherty, supra,* 901) and we conclude that the defendant did not meet

this burden and that the finding of the jury that he was sane at the time of the offense charged is amply supported by the record.

The judgment is affirmed.

Griffin, Acting P. J., and Burch, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.